(No. 56690.—)

THE BOARD OF EDUCATION OF TOWNSHIP HIGH
SCHOOL DISTRICT NO. 211, COOK COUNTY, Peti-
tioner, v. STANLEY T. KUSPER, JR., County Clerk,
Respondent.

*Announced June 29, 1982.—Opinion filed October 22, 1982.*

UNDERWOOD and SIMON, JJ., concurring.

John H. Hager and Elaine E. Bucklo, of Coin, Crowley & Nord, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey and Thomas J. McNulty, Assistant State's Attorneys, of counsel), for appellee.

Gilbert A. Cornfield and Gail E. Mrozowski, of Cornfield and Feldman, of Chicago, for *amicus curiae* Illinois Federation of Teachers, AFT, AFL-CIO, and Illinois Federation of Teachers.

CHIEF JUSTICE RYAN delivered the opinion of the court:

The petitioner, the board of education of Township High School District No. 211, Cook County, Illinois (board), filed a petition for a writ of *mandamus* in the circuit court of Cook County to compel the respondent, the county clerk of Cook County, to extend the board's 1981 taxes in the full amount requested in the tax-levy ordinance for that year without reduction or limitation by virtue of the provisions in the Truth in Taxation Act (Ill. Rev. Stat. 1981, ch. 120, par. 861 *et seq.*). Both the petitioner and the respondent filed motions for summary judgment. The circuit court denied the petitioner's motion for summary judgment, dismissed its petition for a writ of *mandamus*, and entered summary judgment for the respondent. The board appealed, and we granted a motion for a direct appeal to this court pursuant to Rule 302(b) (73 Ill. 2d R. 302(b)). We expedited the hearing because of the necessity for an early determination and announced our affirmance of the trial court on June 29, 1982, noting that an opinion would be filed at a later

date. We now set forth in this opinion the reasons for our affirmance.

The primary issue in this appeal is whether the term "aggregate levy," as used in the Truth in Taxation Act, includes the amount of money the board had levied for debt-service purposes, that is, the amount that had been levied for the purpose of paying principal and interest on bonded indebtedness. In our affirmance of the trial court's ruling we hold that the term "aggregate levy," as used in the Act, does *not* include the debt-service levy.

Sections 3, 4 and 5 of the Truth in Taxation Act (Ill. Rev. Stat. 1981, ch. 120, pars. 863, 864, 865) provide:

"Sec. 3.  The purpose of this Act is to require taxing districts to disclose by publication and to hold a public hearing on their intention to adopt an aggregate levy in amounts more than 105% of the amount of property taxes extended or estimated to be extended upon the levy of the preceding year.

Sec. 4.  Not less than 20 days prior to the adoption of its aggregate levy, hereafter referred to as 'levy', the corporate authority of each taxing district shall determine the amounts of money, exclusive of any portion of that levy attributable to the cost of conducting an election required by the general election law, hereafter referred to as 'election costs', estimated to be necessary to be raised by taxation for that year upon the taxable property in its district.

Sec. 5.  Until it has complied with the notice and hearing provisions of this Act, no taxing district shall levy an amount of ad valorem tax which is more than 105% of the amount, exclusive of election costs, which has been extended or is estimated will be extended upon the levy of the preceding year."

The Act does not define the term "aggregate levy."

In this case, the board published no notice and held no hearing, as required by the Act, relating to its 1981 tax levy. The board construed the term "aggregate levy," as used in the Act, to include the taxes levied for debt service. On September 18, 1981, the board filed its 1981 tax-

levy certificate with the county clerk of Cook County. By including the debt-service levy in its computation, the board determined that its 1981 levy was 104.8% of its 1980 tax extension. Since the 1981 levy was less than 105% of the 1980 extension, the board concluded that no notice or hearing was required by the Act.

The county clerk, by excluding the debt-service levy, found that the 1981 levy was 110.5% of the 1980 tax extension for the district, which the county clerk concluded required that the notice and hearing provisions of the Act be complied with.

In May 1982 the county clerk of Cook County notified the board that its 1981 tax levy did not comply with the Act and refused to extend the amount of taxes which the clerk had determined exceeded 105% of the 1980 extension. The clerk took the position that the term "aggregate levy" did not include the debt-service levy of the school district. This position is supported by an opinion of the Attorney General of the State of Illinois dated October 15, 1981. The board then petitioned the circuit court of Cook County for a writ of *mandamus* to compel the county clerk to extend the plaintiffs' 1981 taxes as levied, with the result as above indicated.

The board argues that a debt-service levy is one portion of the total tax levied each year on the property of the taxpayers. The board contends that under principles of statutory construction, the plain and ordinary meaning of the term "aggregate levy" encompasses all property taxes levied, including the debt-service levy. The intention and purpose of the legislature in enacting the Truth in Taxation Act, according to the board, was to require taxing districts to publicly disclose the amount and purpose of *all* property taxes levied in any year whenever the taxes increase 5% over the prior year.

The board also argues that the Act itself expressly exempts election costs from the "aggregate levy" and, there-

fore, that must be the only exemption or exception the legislature intended to grant.

This argument of the board is not convincing. Section 4 of the Act refers to costs of conducting an election required by the general election law. As to school elections, sections 9—1 and 9—1.1 of the School Code (Ill. Rev. Stat. 1981, ch. 122, pars. 9—1, 9—1.1) provide that school elections and referenda shall be governed and shall be in accordance with the general election law of the State. Article 2A of the Election Code (general election law) (Ill. Rev. Stat. 1981,. ch. 46, par. 2A—1 *et seq.*) provides for the time of holding elections. Pursuant to article 2A, all elections, with certain exceptions, are to be held in accordance with the consolidated schedule set out in that article. Section 17—30 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 17—30) provides that the counties shall pay the costs and expenses of elections within the county, other than those within the jurisdiction of a municipal board of election commissioners. However, for each emergency referendum and each special election not conducted at the time of a regular election, the county and municipality responsible for paying the costs and expenses shall be reimbursed by the political subdivision for which the special election or referendum was held.

These statutory provisions concerning elections reveal that election costs may or may not be an expense which would appear in an annual budget for which tax levies would be made. Whether such an expense constitutes an expense that would appear in the annual budget of a school district would depend upon whether elections for which the district would be required to make reimbursement were conducted during the year. Thus, if election costs were included in the formula by which the 105% limitation is computed, the results would not truthfully inform the taxpaying public whether the taxing officials were increasing the annual expenditures, and thus the taxes, ex-

cessively. This then is the reason for the election-costs exemption.

As discussed later, we hold that when the Act speaks of the aggregate levy, it is speaking of that levy which a taxing body makes annually. When the Act speaks of "aggregate levy," it refers to the total of all levies included in the annual levy ordinance except election costs. An annual levy consists of levies for several different purposes and funds. In the case of a school district, these different levies are referred to in article 17 of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 17—1 *et seq.*). Section 17—11 provides that the amounts levied for these purposes shall annually be certified to the county clerk in a "certificate of tax levy." (Ill. Rev. Stat. 1981, ch. 122, par. 17.11.) The levies for these various purposes are made in the course of the annual levy procedure, and the total amount constitutes the "aggregate levy" certified to the county clerk for extension against the property of the district. The amount levied against the property located within the district for debt-service purposes is not included in the certificate of levy filed annually. Therefore, the fact that the exemption for election costs is the only exemption from the annual levy does not indicate that debt-service levies must be included in the computation of the 105% limitation of the Act.

Debt-service levies constitute a procedure separate and distinct from the annual levy. Insofar as schools are concerned, the adoption of bond ordinances or resolutions is governed by article 19 of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 19—1 *et seq.*). Section 19—7 of the School Code provides that, following the adoption of a bond resolution, it shall be filed with the county clerk and that the county clerk "annually shall extend taxes against all taxable property *** in amounts sufficient to pay maturing principal and interest." (Ill. Rev. Stat. 1981, ch. 122, par. 19—7.) Such levies are not tied to the annual levy

process. The annual levy must be completed and the certificate of tax levy filed with the county clerk within a specified time. (As to school districts, see section 17—11 of the School Code.) There is no requirement that certified copies of bond resolutions be filed annually or that they conform to the requirements of the filing of the annual certificate of levy. It is thus the filing of the bond resolution with the county clerk which triggers the extension of taxes by the county clerk to pay the bond, principal and interest. An annual levy for that purpose need not be made.

Furthermore, section 17—9 of the School Code makes it clear that a tax extended for debt-service purposes is a separate and distinct tax from that included in the annual levy. This section of the School Code provides:

"When the county clerk determines the amount of taxes to be extended upon all the taxable property in any school district having a population of less than 500,000 inhabitants, he shall determine from the certified copies of bond resolutions filed in his office the amount necessary to pay the maturing principal of and interest on any bonds of the district and shall extend a *separate tax* sufficient to pay all principal and interest thereon ***. The *separate tax* shall be extended without limitation as to rate or amount. No deduction shall be made in the rate which may be extended for educational or operations, building and maintenance purposes by reason of any rate extended for payment of principal or interest of bonds, except as provided in this section ***." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 122, par. 17—9.

Having considered the differences between the levies contained in the annual certificate of tax levy and the levy for debt-service purposes, it is again appropriate to refer to the language of the Truth in Taxation Act to determine that the term "aggregate levy," as used in that act, refers only to the levies contained in the annual levy and does not include levies for debt-service purposes.

The Truth in Taxation Act throughout refers to the adoption of a single tax-levy ordinance or resolution and at

one particular time. Section 3 of the Act states that a hearing must be held when it is the intention "to adopt an aggregate levy" which exceeds 105% of the extension of the prior years levied. It would be a strained construction, indeed, to say that this provision requires notice and hearing if the amount of taxes levied in the levy ordinance adopted this year, coupled with the amount which the county clerk will extend by virtue of a bond resolution filed five years ago, exceeds 105% of the amount extended on last year's levy. When section 3 says "to adopt an aggregate levy" it refers to the single act of adopting a levy ordinance or resolution, which is the annual tax-levy ordinance or resolution. Similarly, section 4 of the Act provides that not less than "twenty days before the adoption of its aggregate levy" the corporate authority shall determine the amount necessary to be raised by taxes. Here, again, the term "aggregate levy" can only refer to the single annual levy adopted pursuant to the annual budget and levy process. Section 5 of the Act refers to "the levy of the preceding year," which again has reference to a single levy, the annual levy. Section 7 of the Act refers to "the final tax levy resolution or ordinance adopted," which again can only mean the annual levy resolution or ordinance adopted at the time prescribed in the statute. Section 8 of the Act states, "The tax levy resolution or ordinance approved in the manner provided for in this Act shall be filed with the County Clerk in the manner and at the time otherwise provided by law." This section simply refers to the annual levy which must be filed in the manner and within the time provided by law, which levy, if it exceeds 105% of the taxes extended on the prior year's levy, must be approved in the manner provided for in this act. As noted above, the provisions relating to the time of filing the tax-levy certificate pertains only to the annual levy and not to the filing of a bond resolution with the county clerk, which may be filed at any time during the year.

The entire act refers to the singular act of adopting a levy, which can only apply to the annual levy and not to the taxes levied in the annual levy plus those that may have been levied at some other time during the year or prior years for the payment of principal and interest on bonds. Also, the inclusion of debt-service levies in the computation would not present to the taxpayers an accurate picture of whether expenditures are being excessively increased. The resolution or ordinance which sets the maturity dates for the bonds does not always provide that the same number of bonds will mature each year. Thus, the value of the bonds maturing this year may be substantially greater or less than the value of those maturing next year. If the value of bonds is considered in computing the 105% limitation of the Act the result could extend to the district greater taxing power or it could unduly restrict its taxing power, depending solely upon the number of bonds that matured in the preceding year.

We conclude that the term "aggregate levy," as used in the Truth in Taxation Act, does not include taxes levied for debt-services purposes. The county clerk of Cook County was correct in excluding taxes levied for debt-service purposes when computing the 105% tax limitation provisions of the Act.

Although counsel has not informed this court to this effect, we have learned that the General Assembly passed and that the Governor, on June 23, 1982, signed into law Public Act 82—760. In relevant part, that act amends the Truth in Taxation Act by adding the following:

"Sec. 9.1. If any taxing district lying wholly within a county having more than 3,000,000 inhabitants, by including debt service levies as a part of its aggregate levy pursuant to the estimating procedure set out in Section 4 of this Act, had a levy prior to January 1, 1982 which was more than 105% of the amount of ad valorem property tax, exclusive of election costs and debt service levies, extended or estimated to be extended upon the levy of the

preceding year, such levy shall not be deemed invalid due to noncompliance with the provisions of this Act."

The effect of this amendment is to permit any taxing district to have the full extension of its taxes, if it is wholly within a county with a population of 3 million or more (Cook County), and if it is in violation of the Truth in Taxation Act because it included debt-service levies in its "aggregate levy." The amendment is obviously limited to Cook County taxing districts and to violations of the Truth in Taxation Act in certificates of tax levy filed prior to January 1, 1982. It is a one-time exemption from the Truth in Taxation Act for certain taxing districts, including the Board of Education in this case. However, this amendment does not render this appeal moot. Neither party contends that the issue is moot, and no one has moved to dismiss the case as moot. The validity of the amendment has not been finally determined and is not involved in this case. In addition, construction of the term "aggregate levy," as used in the Truth in Taxation Act, is a matter of great public interest and concern. This term must be given meaning for the continued application of the Act to the tax levies of literally hundreds of taxing bodies. There is not only grave likelihood, but virtual certainty, of future recurrence of the question. This court should therefore give authoritative interpretation to the term. (See *People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 622; *In re Estate of Brooks* (1965), 32 Ill. 2d 361.) We have therefore considered the merits of this appeal.

The board argues, for the first time on appeal, that the Cook County clerk should be estopped from denying the extension of the full amount of 1981 taxes. The board's argument is that the county clerk's decision not to extend taxes in violation of the Truth in Taxation Act was based on an Attorney General's opinion issued after the date on which the board had to file its tax levy certificates. Also, the board argues that its levy certificate was filed on September 19, 1981, yet the county clerk did not notify the

board until May 1982 of its decision not to levy the full amount of the taxes.

We refuse to pass on the merits of the alleged estoppel issue in this case. After a review of the record, it is clear that this issue was never raised at the trial level. Issues not raised in the trial court are generally considered waived on appeal. (*Snow v. Dixon* (1977), 66 Ill. 2d 443; *People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303; see also *People v. Holloway* (1981), 86 Ill. 2d 78.) The basic consideration supporting the rule in this instance is that the failure to urge a particular theory before the trial court effectively precluded the opposing party from presenting rebuttal evidence. Accordingly, we hold that the board has waived its right to assert the equitable estoppel theory.

For the above reasons, we affirm the judgment of the circuit court of Cook County.

*Judgment affirmed.*

JUSTICE UNDERWOOD, concurring:

When our judgment in this case was originally announced, Justice Simon and I believed, predicated upon what we considered to be relevant language in sections 6 and 8 of the Act (Ill. Rev. Stat. 1981, ch. 120, pars. 866, 868), that the General Assembly had intended the term "aggregate levy" as used in the Truth in Taxation Act (Ill. Rev. Stat. 1981, ch. 120, par. 861 *et seq.*) to include taxes levied for debt-service purposes. Consequently, we were noted as dissenting. Since that time, the same General Assembly amended the Act (Pub. Act 82—760, 1982 Ill. Laws 202) in a manner indicating approval of the methods of computing the 105% tax limitation provisions of the Act which were used by the county clerk in this case and which did not include amounts levied for debt-service purposes.

Since that amendment seems to indicate that the legislature intended the result which the majority reaches despite what appeared to Justice Simon and me to be lan-

guage in sections 6 and 8 requiring a contrary result, we now concur in the judgment of the court.

JUSTICE SIMON joins in this concurrence.