FRYDA SHEHADE, Plaintiff-Appellant, v. DAVID M. GERSON, Defendant-Appellee.

First District (4th Division) No. 85—1333

Opinion filed October 23, 1986.

Collins & Uscian, of Chicago (George B. Collins and Christopher Bargione, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Robert J. Milligan, and Joshua G. Vincent, of counsel), for appellee.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiff, Fryda Shehade (Fryda), brings this appeal seeking reversal of the trial court's order dismissing two counts of her three-count complaint. In her complaint Fryda alleges that defendant, David Gerson (Gerson), an attorney, committed legal malpractice. The trial court dismissed the two counts after it ruled that, even if Gerson breached the standard of care by failing to petition the trial court for a particular court order, nevertheless, his failure to request that order could not be considered to be the proximate cause of Fryda's claimed injury.

On appeal Fryda claims that the trial court erred in finding that Gerson's negligence could not be the proximate cause of her injury.

We reverse in part and affirm in part.

BACKGROUND

This matter is before us following the trial court's ruling that two counts of Fryda's second amended complaint fail to state a cause of action under Illinois law. Accordingly, we must accept as true all of the well-pleaded allegations of Fryda's complaint and must draw all reasonable inferences in her favor. *Cook v. Askew* (1975), 34 Ill. App. 3d 1055, 341 N.E.2d 13.

Count II of Fryda's second amended complaint reveals that she was once married to Mesbah Shehade and that the couple had one child, Kaled Shehade, during their marriage. In October 1982 Fryda and Mesbah separated and Fryda filed an action seeking the dissolution of the marriage. The dissolution of marriage action instituted by Fryda involved the division of marital property, the custody of Kaled, and the provision for child support and maintenance. Pursuant to Fryda's request, she was given custody of Kaled pending the outcome of the dissolution of marriage proceeding. Although Fryda was given custody of Kaled, Mesbah retained the right to have periodic visitation with the minor child.

In February 1983 Fryda and her initial attorney agreed to terminate their relationship. Soon thereafter, Fryda employed Gerson to represent her in the pending dissolution of marriage proceeding. Fryda paid Gerson a fee, and, on February 10, 1983, Gerson filed his appear-

ance as Fryda's attorney. Also on February 10, Fryda informed Gerson that Mesbah was a man of violent temper who had threatened to kidnap Kaled and remove him from the United States.

On July 21, 1983, Gerson arranged to have G. Wallace Roth appointed as the attorney to represent Kaled's interests. Gerson, however, failed to inform Roth that he was appointed as the child's attorney.

Later that same month Mesbah had visitation with Kaled. Mesbah wilfully refused to return the child to Fryda. Fryda contacted Gerson and asked Gerson to obtain an order barring and prohibiting Mesbah from having unsupervised visitation with Kaled. Although Gerson was able to obtain the safe return of Kaled, he failed to petition the trial court for an order barring Mesbah from unsupervised visitation with Kaled.

On August 3, 1983, Mesbah had visitation with Kaled. The visitation was unsupervised, and Mesbah again refused to return the child to Fryda. Fryda immediately contacted Gerson. Fryda told Gerson that she feared Mesbah was in the process of kidnaping Kaled, and she asked Gerson to take the appropriate legal action to ensure that Mesbah could not fulfill his threat to remove Kaled from the United States. Gerson failed to respond to Fryda's request.

On August 10, 1983, Mesbah abducted Kaled and removed him to Jordan.

Fryda claims that, as a result of Gerson's failure to act, she has been deprived of the actual custody of the child, has been deprived of every benefit of motherhood, and has no practical way to regain custody of the child in light of Jordan's Islamic law (which recognizes no custodial right on behalf of the mother). In addition, Fryda asserts that she will incur great legal expenses as she attempts to recover Kaled through international legal channels.

Count III of Fryda's second amended complaint is on behalf of Kaled. Fryda realleges the facts set forth above and claims that Gerson's failure to notify Roth resulted in Kaled being taken from the United States against his will. Fryda further asserts that Kaled has been deprived of his mother and has been "relegated to a life in a society alien to those of his birth."

Following the trial court's dismissal of counts II and III, Fryda filed this appeal.

OPINION

I

We first address count II of Fryda's second amended complaint. It

is Fryda's position that count II sufficiently alleges a cause of action for legal malpractice against Gerson.

■ In order to state a cause of action in legal malpractice, a plaintiff must allege: (1) the existence of a duty arising out of the attorney-client relationship; (2) an act or omission that constitutes a breach of that duty; and (3) a causal link between the attorney's breach of duty and the resulting injury or loss to the client. *Cook v. Gould* (1982), 109 Ill. App. 3d 311, 440 N.E.2d 448.

In the case at bar, it is evident (accepting the allegations set forth above as true) that: (1) an attorney-client relationship existed between Fryda and Gerson; (2) Gerson had a duty to protect his client's interests by seeking a court order barring Mesbah from unsupervised visitation with Kaled; and (3) Fryda suffered a resulting injury in that she no longer has custody of her son, Kaled. What is not as clear, however, is whether Gerson's failure to obtain the court order can be said to be the proximate cause of Fryda's injury.

In order for us to agree with the trial court that Gerson's omission to act could not be considered to be the proximate cause of Kaled's kidnaping (and Fryda's resulting injury), it is necessary for us to find that (1) as a matter of law, Gerson could not have obtained the court order requested by Fryda; and (2) as a matter of law, Fryda can prove no set of facts from which a jury could find that Gerson's negligence (in failing to petition the trial court for the order) was the proximate cause of Fryda's injury.

Addressing first whether Gerson could have obtained a court order (had he properly petitioned for it) barring Mesbah from unsupervised visitation with Kaled, section 607(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 607(a) provides:

"Sec. 607. Visitation.

(a) A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral or emotional health. If the custodian's street address is not identified, pursuant to Section 708, the court shall require the parties to identify reasonable alternative arrangements for visitation by a non-custodial parent, including but not limited to visitation of the minor child at the residence of another person or at a local public or private facility."

While it is true that Illinois law favors liberal visitation (*Frail v. Frail* (1977), 54 Ill. App. 3d 1013, 370 N.E.2d 303), courts have recognized that where the welfare or the child's physical, mental, moral or emotional health is seriously endangered, supervised visitation is

proper. See *e.g., In re Marriage of Johnson* (1981), 100 Ill. App. 3d 767, 427 N.E.2d 374.

In the present case Gerson's failure to petition the trial court for an order pursuant to section 607(a) resulted in the trial court never having the opportunity to consider whether Mesbah's threats and conduct posed a danger to Kaled's health and well-being sufficient to justify an order limiting Mesbah's visitation with Kaled. Nevertheless, accepting Fryda's allegations as true, we cannot find *as a matter of law* that a trial court would not have issued such an order. Fryda claims that Mesbah threatened to kidnap Kaled. That such an act might endanger Kaled's health is apparent, for a kidnaping, by its nature, involves the use of force. Consequently, we believe a trial court, following a hearing, could have found that Mesbah posed a threat to Kaled's health, thereby justifying an order requiring supervised visitation. That being the case, we refuse to find as a matter of law that the trial court would not have issued an order prohibiting Mesbah from having unsupervised visitation with Kaled had Gerson properly requested such from the trial court.

We now address whether, assuming that an order barring Mesbah from unsupervised visitation was requested for and granted, Fryda can prove a set of facts sufficient to link Gerson's negligence with Kaled's kidnaping.

Gerson maintains that, even if he breached a duty to Fryda by failing to petition the trial court for the court order, nevertheless, that omission can in no way be found to be the proximate cause of Fryda's injury. Gerson claims that Mesbah kidnapped the child, a criminal act, and that a court order barring unsupervised visitation could not have prevented such from occurring. Gerson points out that even assuming, *arguendo*, that he had obtained the order, Mesbah still could have kidnapped the child "off the street" at any time. Thus, according to Gerson, since the court order could not have prevented Mesbah from committing the ultimate act of kidnaping, Gerson's failure to obtain the order cannot be said to be the proximate cause of Fryda's injury.

Gerson reads the proximate cause issue too broadly. A reading of Fryda's second amended complaint reveals that she is not claiming that the order (prohibiting Mesbah from having unsupervised visitation with Kaled), could have prevented Kaled's kidnaping *per se*; rather, Fryda is asserting that Gerson's failure to obtain the order provided Mesbah with the opportunity to kidnap Kaled on *August 10, 1983*. Absent an opportunity to visit with the child free from supervision, Fryda alleges that Kaled's kidnaping on August 10, 1983, would not have taken place.

■ As a court of review, our function is to determine whether the trial court was correct in ruling that Fryda can prove no set of facts entitling her to relief. (*McCauley v. Chicago Board of Education* (1978), 66 Ill. App. 3d 676, 384 N.E.2d 100.) We must keep in mind that the issue of proximate cause is generally one for the trier of fact (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 117 N.E.2d 74), and that a motion to dismiss should only be granted where the plaintiff's claim fails, as a matter of law, to allege those facts upon which relief can be granted (*Cook v. Askew* (1975), 34 Ill. App. 3d 1055, 341 N.E.2d 13).

■ Applying those standards to the case at bar, and based on the foregoing analysis, we cannot say, as a matter of law, that Gerson's failure to petition the trial court for an order barring Mesbah from unsupervised visitation with Kaled could not be found to be the proximate cause of Kaled's kidnaping and Fryda's resulting injury. Because the kidnaping took place during a period of unsupervised visitation, and because unsupervised visitation is precisely what Fryda requested Gerson to prevent (and which the court order would have prevented), we cannot say that a jury would be unable to find a causal connection between Gerson's alleged negligence and Fryda's claimed injury. That being the case, we reverse the judgment of the trial court with regard to count II of Fryda's second amended complaint.

## II

■ With respect to count III of Fryda's complaint, however, we agree with the trial court that it must be dismissed, for it fails to state a claim upon which relief can be granted. Count III seeks relief on behalf of Kaled for the injury that Kaled allegedly suffers as a result of currently living in Jordan, as opposed to the United States.

■ It has long been the law in Illinois that damages cannot be awarded on the basis of conjecture or speculation. (*Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 443 N.E.2d 36; *DMI, Inc. v. Country Mutual Insurance Co.* (1980), 82 Ill. App. 3d 113, 402 N.E.2d 805.) Where the damages in a negligence action are based on conjecture or speculation, the action must be dismissed, for recoverable damages are an essential element of every negligence action. *Zapf v. Makridakis* (1977), 46 Ill. App. 3d 764, 361 N.E.2d 311.

In the case at bar, we are compelled to find that those damages, if any, which Fryda may be awarded under count III of her second amended complaint would be speculative in nature. First, we are unable to discern how a jury could specify a monetary award to compensate Kaled for living in Jordan as opposed to the United States. Second, the key element of proof, Kaled's testimony, cannot be viewed by

the jury. Thus, because Kaled is unable to testify, the jury would have to guess as to: (1) the fact that he does not want to live in Jordan; and (2) his degree of dissatisfaction with living in Jordan. Because of these infirmities, we believe that any damages which Fryda claims on behalf of Kaled cannot be proved with sufficient certainty. As a result, count III lacks an essential element, recoverable damages, and is therefore properly dismissed. Accord, *Crosby v. City of Chicago* (1973), 11 Ill. App. 3d 625, 298 N.E.2d 719.

Accordingly, for the reasons set forth above, the decision of the trial court with regard to count II of Fryda's second amended complaint is reversed and is remanded for further proceedings. With respect to count III, however, the decision of the trial court is affirmed.

Affirmed in part and reversed in part.

JOHNSON and McMORROW, JJ., concur.