JACKSON JORDAN, INC., Plaintiff-Appellant, v. LEYDIG, VOIT AND MAYER, Defendant-Appellee.

First District (2nd Division)   No. 1—89—0840

Opinion filed May 29, 1990.

Michael T. Hannafan & Associates, Ltd., of Chicago (Michael T. Hanna-fan and James M. Byrnes, of counsel), for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T.

Ferrini, Gary Kostow, Douglas J. Palandech, Suanne P. Hirschhaut, and So-
nia V. Odarczenko, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

The issue raised in this case is whether a plaintiff, who charges defendant law firm with legal malpractice in having given it an allegedly negligent legal opinion some 15 years before suit was filed, is barred as a matter of law by the statute of limitations from litigating its grievance. Plaintiff appeals from the circuit court's grant of summary judgment for defendant to that effect.

Plaintiff, Jackson Jordan, Inc. (Jackson), an Illinois corporation located in Schaumburg, owns a manufacturing plant in Michigan, which produces and sells heavy duty railroad equipment, including a truss-tie tamping machine. This machine tamps the railroad ties onto the ballast, cross-leveling the track and realigning both ties and tracks onto the road bed. Jackson has sold equipment to various railroad companies for the past 50 years throughout the United States. Its main competitors are Plasser American Corp. (Plasser American) and Canron, Inc. (Canron).

Defendant, Leydig, Voit & Mayer (Leydig), an Illinois law partnership located in Chicago, specializes in the practice of intellectual property law, including patents, trademarks and copyrights. Leydig also prosecutes patent applications with the United States Patent and Trademark office; issues opinions regarding the patentability of inventions; and engages in general patent infringement litigation. Leydig has represented Jackson in the patent area for many years, although not on a retainer basis. As part of its legal services rendered at Jackson's request, Leydig continuously reviewed publications, reporting recent patents, and advised Jackson of those patents which might be of interest to Jackson. On April 30, 1970, Leydig sent Jackson a copy of United States Patent No. 3,494,297 ('297 patent), which was issued to Franz Plasser and Joseph Theurer for a "Mobile Track Maintenance Machine."[1]

In 1969, and again in 1973, Jackson asked Leydig for opinions as to whether its tamping machine and succeeding models were patentable, as well as whether the machines infringed upon any existing patents. Leydig issued two opinion letters, one dated December 11, 1969, and the other dated May 23, 1973, essentially informing Jackson that the machines were not patentable. Leydig also stated that the machines did not then infringe upon any unexpired patents.

---

[1]Patent '297 subsequently was assigned to Plasser American.

The '297 patent machine was manufactured and sold by Plasser American in competition with Jackson's and Canron's tamping machines since 1970. The features and operations of all three machines are substantially the same. Although Leydig informed Jackson of the '297 patent during the course of its ongoing review of published recent patents mentioned above, the '297 patent was not again mentioned to Jackson in Leydig's 1973 letter. The '297 patent expired February 10, 1987.

The 1973 Leydig opinion did note three patents which, it asserted, were "rather easily distinguishable from the proposed machine"; however, the Plasser American '297 patent was not among them. Daniel J. Donahue, Jackson's president, averred that the letter was influential in the company's decision to produce its new model 6000 machine, which Jackson then began manufacturing.

In July 1975, Plasser American instituted proceedings against Canron for infringement upon the former's '297 patent. Jackson employees knew of the litigation, but not of its specific details. In April 1980, the United States District Court in South Carolina issued an opinion in favor of Plasser American. *Plasser American Corp. v. Canron, Inc.* (D.S.C. 1980), 546 F. Supp. 589.

Leydig sent Jackson a letter on July 15, 1980, explaining the details of the Canron litigation. In response to Jackson's request, Leydig, on August 26, 1980, wrote an opinion letter analyzing the impact of the decision on a potential infringement claim and asserting that the '297 patent was invalid. Leydig further advised that Jackson had two available defenses, *laches* and estoppel, if litigation ensued. Leydig also recommended that Jackson sue Plasser American.

Plasser American sent Jackson a letter, dated June 28, 1982, formally notifying Jackson of its possible infringement upon the '297 patent, demanding a license fee, and threatening litigation if Jackson did not agree. On Leydig's advice, Jackson thereafter sued Plasser American in Virginia, seeking declaratory relief. Plasser American counterclaimed for infringement. Although the district court found the '297 patent invalid, ultimately it was upheld on review, found enforceable and infringed upon by Jackson. (*Jackson Jordan, Inc. v. Plasser American Corp.* (Fed. Cir. 1987), 824 F.2d 977.) In a letter dated September 16, 1987, Jackson informed Leydig that it intended to file a malpractice suit against the firm and offered to permit Leydig to participate in its settlement negotiations with Plasser American. Leydig declined and withdrew as counsel. On September 22, 1987, Jackson settled the pending lawsuit, agreeing to pay Plasser American $1.9 million.

On February 1, 1988, Jackson filed its instant legal malpractice complaint against Leydig, claiming that Leydig had a duty of bringing infringement violations to Jackson's attention, which Leydig breached by negligently failing to reveal the '297 patent in April 1970 and in its opinion letter of May 23, 1973, and by negligently failing to properly review the '297 patent. Jackson asserted that, but for Leydig's negligence, it would not have manufactured its tamping machine and would not have suffered damage. Jackson claimed as damages the $1.9 million settlement with Plasser American and $350,000 in attorney fees paid by Jackson to Leydig.

Leydig filed its answer and affirmative defense on March 11, 1988, denying all the material allegations of Jackson's complaint. Leydig's affirmative defense raised the five-year statute of limitations provided in section 13—205 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13—205) (section 13—205), claiming the cause of action accrued at the time of breach and that Jackson was time barred.

Leydig moved for summary judgment, based upon the statute of limitations defense. Following its hearing on Leydig's motion, the circuit court ruled that Jackson's cause of action accrued when Plasser American sent its claim of infringement to Jackson on June 28, 1982. The court stated its analysis for the record:

> "On June 28, 1982, when Plasser American said, 'we're going to go after you, Mr. Plaintiff.' At that moment in time the plaintiff knew something was wrong. He knew that his lawyers goofed up. He also knew that he better hire counsel and he better get ready to defend this thing because he was going to get sued.
>
> And from that moment on, in my opinion, a cause of action against his lawyers had accrued and the only thing we're waiting around to see is how bad is this going to be."

The court reaffirmed this ruling at a hearing held on March 15, 1989, and granted Leydig summary judgment. On March 22, 1989, Jackson filed its notice of appeal.

I

Jackson initially contends that its cause of action for legal malpractice did not accrue until it became obligated to pay the settlement damages in September 1987, because prior to that time, not all the elements of the legal malpractice had materialized.

■■ An action for legal malpractice must plead facts which establish the existence of an attorney-client relationship; the breach of a duty owed by virtue of that relationship; and that such negligence was

the proximate cause of injury or of loss to the client. (*Goldstein v. Lustig* (1987), 154 Ill. App. 3d 595, 598, 507 N.E.2d 164; *Shehade v. Gerson* (1986), 148 Ill. App. 3d 1026, 1029, 500 N.E.2d 510; *Cook v. Gould* (1982), 109 Ill. App. 3d 311, 440 N.E.2d 448.) Such an action accrues when the attorney breaches its duty to act skillfully and diligently on behalf of its client. (*Dolce v. Gamberdino* (1978), 60 Ill. App. 3d 124, 376 N.E.2d 273; *Maloney v. Graham* (1912), 171 Ill. App. 409. *Cf. Tucek v. Grant* (1984), 129 Ill. App. 3d 236, 472 N.E.2d 563; *Kohler v. Woollen, Brown & Hawkins* (1973), 15 Ill. App. 3d 455, 304 N.E.2d 677.) A client's action against its attorney is one for damages; unless the client has suffered a monetary loss as the result of some negligent act on the part of the attorney there is no basis for the lawsuit. *Chicago Red Top Cab Association, Inc. v. Gaines* (1977), 49 Ill. App. 3d 332, 333, 364 N.E.2d 328; see also *Bronstein v. Kalcheim & Kalcheim, Ltd.* (1980), 90 Ill. App. 3d 957, 959, 414 N.E.2d 96.

Jackson urges that the date it became liable to Plasser American for its patent infringement is the first date it could accurately allege damages resulting from Leydig's breach of duty, citing *Bartholomew v. Crockett* (1985), 131 Ill. App. 3d 456, 475 N.E.2d 1035, and other authorities. In those cases, however, plaintiffs-clients could not show that their attorneys' negligence in underlying litigation management resulted in their loss of rights or incurrence of legal or other expenses. For example, in *Bartholomew v. Crockett*, plaintiff was required to plead and prove damages resulting from the attorney's late filing of a worker's compensation claim, which entailed establishing that, but for attorney's negligence, the client would have prosecuted the compensation claim successfully. The attorney's negligent conduct could result in actual damages only if plaintiff failed to recover on the underlying personal injury claim, the outcome of which was unknown. 131 Ill. App. 3d at 465.

■ In the case *sub judice*, Leydig told Jackson that there were no infringement problems in its letter of May 23, 1973. Subsequently, Jackson became susceptible to a patent violation suit, incurring monetary expense in order to defend itself. Jackson filed suit in the Federal court, incurring legal expenses, because it was concerned about its interest in the wake of the Plasser American/Canron litigation. The 1982 Plasser American letter informed Jackson of potential litigation. Although damages sustained by Plasser American were as yet unknown,[2]

---

[2]In patent law, actual damages must be shown by competent evidence; they are not implied by legal inference. *Philp v. Nock* (1873), 84 U.S. 460, 21 L. Ed. 679; 60 Am. Jur. 2d *Patents* §1076 (1987).

Jackson already was sustaining money damages in the form of attorney fees incurred in order to contest the allegation of infringement. Jackson, in fact, was billed for legal services after receiving the 1982 Plasser American letter. Jackson concedes that these services constituted part of the $350,000 legal fee damages claimed by Jackson as a result of the asserted malpractice. Therefore, Leydig's negligent 1973 opinion regarding potential patent infringement began to injure Jackson monetarily in 1982, which Jackson knew of by virtue of paying the legal fees. Damages are speculative only when uncertainty exists as to the fact of damage rather than uncertainty as to their amount. *DeKoven Drug Co. v. First National Bank* (1975), 27 Ill. App. 3d 798, 327 N.E.2d 378; 22 Am. Jur. 2d *Damages* §24 (1988).

■ Illinois courts have held that when wrongful acts of a defendant involve a plaintiff in litigation with third parties or require it to incur expenses to protect its interests, damages are then recoverable against the wrongdoer, measured by reasonable litigation expenses, including attorney fees. (*National Wrecking Co. v. Coleman* (1985), 139 Ill. App. 3d 979, 982, 487 N.E.2d 1164, citing *Ritter v. Ritter* (1943), 381 Ill. 549, 554, 46 N.E.2d 41; *Sorenson v. Fio Rito* (1980), 90 Ill. App. 3d 368, 413 N.E.2d 47.) Whether plaintiff incurs the expense in offensive or in defensive actions is of no consequence. *National Wrecking Co. v. Coleman*, 139 Ill. App. 3d at 983.

■ In his affidavit, James E. Anderson, Jackson's project engineer and principal contact between Leydig and Jackson in 1973, averred that had Leydig informed the company of the patent in its May 23, 1973, letter opinion, the company's engineers "including me at the time could have 'designed around' the tamping machine disclosed by the '297 patent in order to avoid possible infringement problems." The entire litigation and concomitant expenses might have been avoided if Leydig's assertedly negligent advice had not been given.

The foregoing evidence supports the circuit court's ruling that Jackson's knowledge of Leydig's legal malpractice commenced on June 28, 1982.

II

Jackson argues, alternatively, that the discovery rule should apply and that the circuit court erred in granting Leydig's motion for summary judgment by finding no question of fact concerning what the company knew or should have known by June 28, 1982. The circuit court ruled that on June 28, 1982, Jackson knew or reasonably should have known of its injury and thereafter was bound to inquire as to whether the injury was wrongfully caused.

■ The purpose of the summary judgment procedure is not to try a question of fact, but to determine whether one exists. (*Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 294, 529 N.E.2d 552; *La Salle National Bank v. Illinois Housing Development Authority* (1986), 148 Ill. App. 3d 158, 161, 498 N.E.2d 697; *Montes v. Hawkins* (1984), 126 Ill. App. 3d 419, 423, 466 N.E.2d 1271.) A motion for summary judgment should be granted only if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) The pleadings, affidavits and depositions must be construed most strictly against the movant and most liberally in favor of the opponent. *In re Estate of Whittington* (1985), 107 Ill. 2d 169, 177, 483 N.E.2d 210; *Aspegren v. Howmedica, Inc.* (1984), 129 Ill. App. 3d 402, 403, 472 N.E.2d 822.

At bar, Jackson knew in 1980 that it was manufacturing tamping machines similar to the Canron machine found to have infringed upon the Plasser American patent; however, according to Jackson's president, Donahue, it did not begin to believe Leydig was negligent until May 2, 1987. Significantly, however, in 1982, after receiving the letter from Plasser American, Jackson's employees began meeting with Phillip Mayer of Leydig to discuss defenses calculated to defeat the claim of infringement.

■ The statute of limitations when applied in discovery situations starts to run when one knows or reasonably should know of its injury and also knows or reasonably should know that the injury was wrongfully caused. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 415, 430 N.E.2d 976; *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 169, 421 N.E.2d 864; *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869.) Such questions ordinarily are deemed genuine issues of fact to be determined by the finder of fact; however, where only a single conclusion can be drawn from the undisputed facts, the question becomes one for the court. *Witherell,* 85 Ill. 2d at 156.

■ Leydig maintains that Jackson's various affidavits and depositions demonstrate sufficient knowledge of the injury or problem: both Anderson and Donahue were concerned in 1980 that Plasser American might try to sue them as it did Canron; both Anderson and Bruce Bradshaw, Jackson's chief engineer, knew that Canron's machine was similar to Jackson's machine; and, in 1982, Jackson received the formal Plasser American letter asserting its patent rights and Jackson's probable patent infringement. The circuit court correctly held summarily that this cumulative knowledge provided the requisite concurrence between knowledge of injury and its potentially wrongful causation

which started the statute of limitations running upon the receipt of Plasser American's letter of June 28, 1982.

■■ Jackson's final argument, first raised in its reply brief, claims Leydig's continuing advice and reassurance that "all was well" should be construed as an equitable estoppel, citing *Witherell* (85 Ill. 2d at 159-60). Points not argued in appellant's principal brief "are waived and shall not be raised in the reply brief, [or] in oral argument." (113 Ill. 2d R.341(e)(7).) Further, the theory of equitable estoppel not having been pleaded in Jackson's complaint nor argued before the circuit court, prevents this court from considering that issue on appeal. *Board of Education of Township High School District No. 211 v. Kusper* (1982), 92 Ill. 2d 333, 342-43, 442 N.E.2d 179; *United States Fidelity & Guaranty Co. v. Specialty Coatings Co.* (1989), 180 Ill. App. 3d 378, 383, 535 N.E.2d 1071.

For the reasons described above, the circuit court's grant of summary judgment for Leydig must be affirmed.

Affirmed.

DiVITO, P.J., and BILANDIC, J., concur.