In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3192

Pamela J. Alper and Michael N. Alper,

Plaintiffs,

v.

Altheimer & Gray, an Illinois partnership,
Myron Lieberman, and Robert L. Schlossberg,

Defendants-Third/Party
Plaintiffs-Appellants,

v.

Bickel & Brewer, a Texas partnership,

Third/Party Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 1200--Rebecca R. Pallmeyer, Judge.

Argued November 6, 2000--Decided November 16, 2000
Opinion July 12, 2001/*

   Before Kanne, Diane P. Wood, and Williams,
Circuit Judges.

   Kanne, Circuit Judge.  We are
occasionally presented with corporate
transactions gone awry, and it is a
characterization that aptly describes the
case before us. Pamela J. Alper and
Michael N. Alper (the Alpers) owned 100%
of the shares of Terrific Promotions,
Inc. (TPI). Through TPI, the Alpers
engaged in two businesses: 1) a retail
business, Dollar Bill$, whose 136 stores
sold consumer goods priced mostly at one
dollar and 2) a wholesale merchandising
business, which sold manufacturers'
brand-name products to distributors and
wholesalers. In late 1995 and early 1996,
the law firm of Altheimer & Gray
represented the Alpers in a transaction
in which the Alpers transferred all of
the capital stock of TPI to Dollar Tree
Stores (DTS) for $53 million.

   After the transaction's January 1996
closing date, the Alpers realized that

all was not as they had intended. They allege that, contrary to their wishes, both the retail business and the wholesale merchandising business had been transferred to DTS, rather than just the former. Further, a key TPI employee, Timothy Avers, had gone to work for DTS, which the Alpers allege was in violation of a non-compete agreement. The Alpers hired the law firm of Bickel & Brewer ("Bickel") to sue DTS and Avers on a variety of claims, including fraudulent inducement, breach of contract, civil conspiracy, and unfair competition. Bickel filed suit in state court, and later filed a second suit in federal court alleging violations of the federal securities and antitrust laws in addition to the aforementioned state law claims. The Alpers voluntarily dismissed the claims in state court, though their reason for doing so is disputed. The dis trict court subsequently dismissed the Alpers' federal claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure and declined to exercise supplemental jurisdiction over the state law claims. See Terrific Promotions, Inc. v. Dollar Tree Stores, Inc., 947 F. Supp. 1243, 1249 (N.D. Ill. 1996). The Alpers, who were at that time represented by Bickel, did not appeal these rulings. Under Illinois law, a plaintiff who voluntarily dismisses an action is only permitted one refiling of that cause of action, thus it is possible that the Alpers are now procedurally barred from pursuing further litigation against DTS and Avers. See 735 Ill. Comp. Stat. Ann. 5/13-217 (West Supp. 2001); Timberlake v. Illini Hosp., 676 N.E.2d 634, 636 (Ill. 1997) (holding that section 13-217 barred refiling by plaintiff who had already voluntarily dismissed action in state court and had action dismissed for lack of pendent jurisdiction in federal court).

In light of the above events, the Alpers filed suit pursuant to 28 U.S.C. sec. 1332 in the United States District Court for the Northern District of Illinois, alleging, inter alia, professional negligence on the part of Altheimer & Gray and two of the firm's attorneys-- Myron Lieberman and Robert L. Schlossberg (collectively referred to as "Altheimer"). The Alpers claim that Altheimer failed to protect the Alpers' interests by negligently drafting the

documents that transferred TPI to DTS. This negligence allegedly gave DTS control of the TPI wholesale merchandising business and allowed DTS to hire Avers and other key merchandising personnel. The claim is still pending in the district court.

Altheimer subsequently filed a third-party complaint against Bickel, pursuant to 28 U.S.C. sec. 1367, alleging that Bickel committed malpractice in the course of pursuing the Alpers' claims against DTS and Avers. Altheimer denies that it acted negligently, but asserts that Bickel is liable to Altheimer for contribution to the extent that Altheimer is held liable for causing any injury to the Alpers. The district court determined that Altheimer could not seek contribution because the third-party contribution claim did not meet the requirements of the Illinois Joint Tortfeasors Contribution Act (the "Contribution Act" or "Act"), 740 Ill. Comp. Stat. Ann. 100/0.01-100/5 (West 1993, Supp. 2001), and dismissed the claim. On Altheimer's motion, the court directed the entry of final judgment on the third-party complaint pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, in order to permit immediate appeal to this court. Altheimer appealed the district court's dismissal and we reversed and remanded for the following reasons.

I.  Analysis

We review dismissals under Rule 12(b)(6) de novo, examining a plaintiff's factual allegations and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. See Marshall-Mosby v. Corp. Receivables, Inc., 205 F.3d 323, 326 (7th Cir. 2000). Dismissal under 12(b)(6) is proper only if the plaintiff could prove no set of facts in support of his claims that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); Veazey v. Communications & Cable of Chi., Inc., 194 F.3d 850, 854 (7th Cir. 1999). "[I]f it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." Veazey, 194 F.3d at 854 (citing Graehling v. Vill. of Lombard, Ill., 58 F.3d. 295, 297 (7th Cir. 1995)).

The Contribution Act provides that "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, . . . there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 Ill. Comp. Stat. Ann. 100/2(a) (West 1993, Supp. 2001). For a complaint to properly allege a right of contribution pursuant to the Act: 1) the defendant and the third party "must both be subject to liability in tort to the [plaintiff], and 2) their liability must arise out of the same injury." People v. Brockman, 592 N.E.2d 1026, 1029 (Ill. 1992). Bickel contends that neither of these requirements are satisfied here. Bickel also contends that Altheimer's third-party complaint is inconsistent with the goals of the Contribution Act. We address each argument in turn.

A.  The Elements of the Contribution Act

1.  Subject to Liability in Tort

  With respect to the first requirement, Bickel alleges that we must ask whether it was liable in tort to the Alpers at the time of the injury alleged in the Alpers' complaint. Because Bickel was not even hired until after Altheimer's allegedly negligent conduct occurred, Bickel asserts that it is not liable in tort within the meaning of the Contribution Act. This reading of the Act, however, is inconsistent with Illinois case law. To determine whether Bickel is potentially liable in tort, we look to "the time of the injury out of which the right to contribution arises." Vroegh v. J & M Forklift, 651 N.E.2d 121, 125 (Ill. 1995). Altheimer's alleged right to contribution is based on the allegation that Bickel negligently represented the Alpers.

  Under Illinois law, "[a]n action for legal malpractice must plead facts which establish the existence of an attorney-client relationship; the breach of a duty owed by virtue of that relationship; and that such negligence was the proximate cause of injury or of loss to the client." Jackson Jordan, Inc. v. Leydig, Voit & Mayer, 557 N.E.2d 525, 527 (Ill. App. Ct. 1990), aff'd in part and rev'd in part on other grounds, 633 N.E.2d 627

(Ill. 1994). Altheimer's third-party complaint asserts that Bickel had an attorney-client relationship with the Alpers, that Bickel's negligence led to the triggering of section 13-217, that section 13-217 might prevent the Alpers from pursuing further litigation against DTS and Avers, and that such a bar would prevent the Alpers from obtaining compensation from DTS and Avers. While each of these elements will have to be proven at trial, Altheimer has properly pleaded that Bickel negligently caused the loss of the Alper's cause of action.

Bickel relies on Vroegh, 651 N.E.2d 121, and Delaney v. McDonald's Corp., 634 N.E.2d 749 (Ill. 1994), for the proposition that it cannot be held liable in contribution because it was not retained until after the Alpers were injured by Altheimer. The discussions in those cases, however, explained that a defendant may seek contribution from a tortfeasor so long as the plaintiff had a valid cause of action against the tortfeasor at the time of the injury caused by that tortfeasor's conduct, even if the plaintiff's direct claim against the tortfeasor is later barred for a procedural reason. See Vroegh, 651 N.E.2d at 125; Delaney, 634 N.E.2d at 750. Rather than undermining Altheimer's claims, these cases demonstrate that even if the Alpers are now barred from suing Bickel (due to operation of 735 Ill. Comp. Stat. Ann. 5/13-217 or otherwise), Altheimer can still seek contribution from Bickel. We thus find that Altheimer's complaint satisfies the first element of the Contribution Act.

2. The Same Injury Requirement

We thus turn to the primary dispute between the parties, which is whether Bickel's potential liability arises out of the same injury as does Altheimer's potential liability. Past Illinois cases have determined that "the proper focus [of this inquiry] . . . is not the timing of the parties' conduct which created the injury, but the injury itself." People v. Brockman, 592 N.E.2d 1026, 1030 (Ill. 1992). Thus, if a trier of fact could find that Altheimer's and Bickel's conduct combined to produce the same injury, Altheimer has properly pleaded a third party action for contribution, even though the conduct of the two parties

occurred at different times. See id.

It should be emphasized that, in evaluating whether the district court properly dismissed Altheimer's complaint, we are determining whether Altheimer stated a complaint under which relief could be granted. See Fed. R. Civ. P. 12(b)(6). Thus, we are not answering the question of whether Altheimer and Bickel did actually cause the same injury, we are deciding whether there is a legal basis under which Altheimer can argue that they did.

With this proviso in mind, we will compare the Alpers' complaint to the allegations in Altheimer's third-party complaint to determine whether a reasonable fact finder could find that Altheimer's and Bickel's liability arose out of the same injury. The Alpers' First Amended Complaint seeks relief from Altheimer for misconduct relating to "defendants' misrepresentations and failure to competently represent the Alpers and protect the Alpers' legitimate business interests." First Amended Complaint para. 1. The Alpers allege that Altheimer had a duty, with respect to the Dollar Bill$ transaction, to competently represent them and to exercise a reasonable standard of care, skill, and diligence. Plaintiffs assert that defendants breached these duties by:

(a) Failing to take all necessary steps to maximize the benefits of the Dollar Bill$ transaction to the Alpers;

(b) Failing to properly document the terms of the Dollar Bill$ transaction as specified by the Alpers; [and]

(c) Failing to properly prepare the Dollar Bill$ transaction documentation so that the TPI/Alper wholesale merchandising business was specifically immunized from the transaction.

Id., para. 59./1 Plaintiffs allege damages "to the extent of $200,000 in attorney's fees [the amount paid to Altheimer for their services in connection with the original transaction] and in excess of $1.5 million attributable to the loss of their wholesale merchandising business." See Memorandum in Support of Plaintiffs' Motion for Summary Judgment at 12.

In comparison, Altheimer alleges that Bickel was negligent in its pursuit of the Alpers' claims against DTS and Avers and that the Alpers' inability to obtain compensation from DTS and Avers for their alleged injuries is the proximate result of Bickel's negligence. Altheimer asserts that, if the Alpers were successful on the claims they advanced against DTS and Avers, they could have obtained relief for all the losses they claimed to have sustained as a result of the Stock Purchase Agreement and DTS' subsequent dealings with Avers. This argument overlooks the fact that those suits would not have returned the $200,000 the Alpers had already paid to Altheimer. Nonetheless, if "the bases for liability among the contributors" do not have to be the same, Vroegh v. J & M Forklift, 651 N.E.2d 121, 125 (Ill. 1995), then the fact that the monetary damage caused by Altheimer's and Bickel's actions is not equivalent should not be an obstacle to holding both liable for contributing to the same injury.

Whether we find that Altheimer and Bickel have caused the same injury depends on how broadly or narrowly we define the injury. Under a broad definition of injury, a fact-finder could find that both parties failed to competently represent the Alpers and protect the Alpers' legitimate business interests. For example, if the injury encompasses DTS's fraudulent acquisition and continued retention of the diverting business, and the Alpers' inability to obtain relief for Avers' defection to DTF, then Altheimer and Bickel could both have contributed to that injury. In contrast, if the Alpers' injury is that Altheimer drafted flawed transaction documents, then Bickel cannot be held liable for that injury because Bickel had no part in the drafting.

To determine how to appropriately characterize plaintiffs' injury, we look to Illinois case law addressing the "same injury" requirement. The most relevant case, People v. Brockman, 592 N.E.2d 1026 (Ill. 1992), defined the injury fairly broadly. In the underlying suit, the State of Illinois charged the defendants with operating a landfill site from 1970 to 1979 in a manner that: 1) caused leachate to flow into Illinois waters,

creating a water pollution hazard, and 2) contaminated the groundwater and subsurface water with waste material, constituting a public nuisance. See id. at 1028. The Illinois EPA subsequently contracted with an engineering firm to monitor the site and implement a clean-up plan. The firm completed performance of this contract in 1986. Defendants filed third party complaints in 1987 alleging that the firm contributed to the pollution hazard at the site by negligently conducting monitoring operations and by drilling in a manner that caused the discharge of contaminants into the groundwater. The engineering firm argued that its liability and the defendants' liability did not arise out of the same injury, but the Illinois Supreme Court rejected this argument. See id. at 1029-30. Because the State alleged that defendants created a water pollution hazard, and defendants alleged that the engineering firm's conduct "contributed to the same water pollution hazard," the court determined that "the trier of fact could find that the conduct of the defendants and [the firm], although separate in time, contributed to produce the same injury for purposes of the Contribution Act." Id. at 1030.

Bickel attempts to distinguish Brockman in the context of the requirement that a third party defendant must be liable in tort to the plaintiff in order to be liable for contribution. They allege that because the damage to the environment was an ongoing injury, the engineering firm's negligence occurred at the same time as the injury alleged in the complaint, and thus it was proper for the court to determine that the third party tortfeasor was liable to the plaintiff at the time of defendants' injurious conduct. This is both an incorrect interpretation of the case and an unnecessary argument. We have already explained that, under Illinois law, it is possible for a defendant to seek contribution from a tortfeasor who injured the plaintiff subsequent to the defendant--the injury does not have to be concurrent. See Vroegh, 651 N.E.2d at 125; see also Brockman, 592 N.E.2d at 1030.

A broad characterization of the injury thus seems appropriate here. The district court's discussion focused on one particular injury: "the inability of the

Alpers to obtain relief for Avers' joining DTS to run a wholesale diverting business." Alper v. Altheimer & Gray, No. 97 C 1200, 2000 WL 1006740, at *2 (N.D. Ill. July 19, 2000). The court determined that Bickel/2 could not have caused this same injury based upon the following analysis: 1) Altheimer alleged that the Alpers never instructed it not to transfer the wholesale business to DTS; 2) If this were true, the non-compete claims filed in state court would have had little merit because the Alpers would then have had no protectable interest in preventing Avers from competing; 3) If the jury finds that Altheimer failed to provide an adequate cause of action for Avers' defection, then, to seek contribution, Altheimer will have to argue that Bickel was negligent in failing to maintain a state court claim cause of action that was inadequate; 4) Under Roberts v. Heilgeist, 465 N.E.2d 658, 661 (Ill. App. Ct. 1984), attorneys do not have a duty to pursue fruitless litigation. See Alper, 2000 WL 1006740, at *2-3. The district court thus held that Bickel could not have caused the same injury as did Altheimer. See id.

This analysis does not address the fact that what is at issue here is a motion for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. When reviewing such a motion, a court must be careful not to require more than what is mandated by Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Altheimer does not have to prove its factual and legal allegations at this stage, it must only show that relief is possible. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992). Further, it is entitled to plead in the alternative, even if the pleadings are inconsistent. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure sec. 1283 (2d ed. 1990, Supp. 2001).

Various constructions of the facts in this case would permit Altheimer to recover from Bickel. For example, even if Altheimer negligently drafted the transaction documents, DTS and Avers could still have fraudulently induced the Alpers to sell their merchandising

business. If the Alpers had viable claims against DTS and Avers, it is possible that Bickel's negligence prevented the Alpers from recovering on those claims. If the jury were to find that Altheimer injured the Alpers by losing the merchandising business, then Altheimer could seek contribution from Bickel for its role in that injury.

We thus find that Altheimer has properly stated a claim for contribution under the Contribution Act because Bickel and Altheimer both allegedly failed to protect the Alpers' interests with respect to DTS and Avers. We note that our decision today does not speak to the merits of Altheimer's contribution claim. If the Alpers prevail on their claim against Altheimer, the trier of fact will then determine whether Bickel is liable for contribution.

## B.  Public Policy Considerations

The district court found that Altheimer could not pursue a contribution claim in part based upon its determination that public policy considerations militated against this type of third-party malpractice claim. Though no Illinois case has declared such a bar, the district court was persuaded by a state court case from Utah, Hughes v. Housley, 599 P.2d 1250 (Utah 1979). As noted by the district court, Hughes expressed "policy concerns about imposition of a duty on successor counsel in favor of his predecessor." Alper v. Altheimer & Gray, No. 97 C 1200, 2000 WL 1006740, at *5 (N.D. Ill. July 19, 2000). A subsequent Illinois case, Roberts v. Heilgeist, 465 N.E.2d 658, 662 (Ill. App. Ct. 1984), did cite to Hughes, but only in dicta. Roberts did not reach the issue of "whether public policy considerations prevent a malpractice plaintiffs' former attorney, who is the defendant in the malpractice action, from seeking contribution in that action from the plaintiff's current attorney" but noted that "there is substantial merit to the rationale of other courts that have considered this question and have held that . . . suits by a former lawyer against a current or succeeding lawyer contravene public policy." Id.

It does not appear, however, that any Illinois courts have ever followed the

rationale of Roberts. See, e.g., Horizon Fed. Sav. Bank v. Selden Fox & Assoc., No. 85 C 9506, 1988 WL 71244, at *2 (N.D. Ill. June 29, 1988). The Illinois Supreme Court has since recognized that an attorney may bring a third-party action for contribution against a successor attorney. See Faier v. Ambrose & Cushing, P.C., 609 N.E.2d 315, 316 (Ill. 1993); see also Brown-Seydel v. Mehta, 666 N.E.2d 800 (Ill. App. 1996); Goran v. Glieberman, 659 N.E.2d 56 (Ill. App. Ct. 1995). The district court distinguished Faier, Brown-Seydel, and Goran, and found that Altheimer could still be barred from pursuing its claim because Altheimer and Bickel did not work "'on the same underlying cause.'" Alper, 2000 WL 1006740, at *5 (quoting Faier, 609 N.E.2d at 316). It is not appropriate for a federal court, however, to distinguish state precedent for the purpose of adopting the reasoning of a non-binding state court decision. The proper role of a federal court sitting in diversity jurisdiction is to apply state substantive law, and only "in the absence of" state authority may the district courts "consider decisions from other jurisdictions." Lexington Ins. Co. v. Rugg & Knopp, Inc., 165 F.3d 1087, 1090 (7th Cir. 1999). Here was Illinois authority recognizing the right of an attorney, under Illinois law, to "seek contribution for a legal malpractice claim." Goran, 659 N.E.2d at 561. Unless the Illinois courts decide that this type of contribution action is barred by public policy, or the Illinois legislature sees fit to amend the Contribution Act, the district court is bound to recognize this right.

II.  Conclusion

The district court dismissed Altheimer's contribution claim for failure to state a claim upon which relief could be granted under Rule 12 (b)(6) of the Federal Rules of Civil Procedure. The judgment of dismissal has been REVERSED and the case REMANDED for proceedings consistent with this opinion.

FOOTNOTES

/* On November 16, 2000, we issued an order reversing the district court's decision and remanding for further consideration. We indicated that an opinion explaining our conclusion would follow.

/1 The Alpers also alleged that Altheimer failed to memorialize the fee agreement in writing as required by the Illinois Rules of Professional Conduct but that claim was not discussed by either party on appeal.

/2 Robert Cummins, a lawyer at Bickel & Brewer, was the lawyer engaged by the Alpers to file the lawsuit against DTS and Avers. The district court opinion thus refers to the Third-Party Defendant as "Cummings." Cummings subsequently departed from Bickel and founded his own firm, Cummins & Cronin, which represented the Alpers in the district court.