BENJAMIN BELDEN *et al.*, Plaintiffs-Appellants, v. HOWARD EMMERMAN *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—89—1118

Opinion filed September 18, 1990.

John D. Brennan, of Chicago, for appellants.

Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., of Chicago (Alan P. Solow and Mindy B. Gordon, of counsel), for appellees.

James T. Ferrini, Gary Kostow, Suanne Hirschhaut, and Sonia V. Odarszenko, of Clausen, Miller, Gorman, Caffrey & Witous, of Chicago, for Michael Weissman and Weissman & Pond.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

Plaintiffs Benjamin Belden (Belden) and Adler Center for Behavior Modification (Adler) brought this action against their former attorneys alleging legal malpractice, breach of contract, breach of fiduciary duty, and fraud. The circuit court granted defendants' motions to dismiss plaintiffs' third amended complaint pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619), on the basis that the complaint was time barred. On appeal, plaintiffs contend that the circuit court erred in holding that the statute of limitations had run on their claims.

The underlying facts of this case are as follows. Belden was the president of Adler, which was in the business of providing psychotherapy. Its offices were located at 310 South Michigan Avenue in Chicago. On May 2, 1982, Adler was notified that its lease would be terminated. On May 20, 1982, Adler's lease was terminated following a dispute over storage space. Thereafter, the landlord accepted Adler's rent payments for the months of May, June, and July.

On July 7, 1982, Adler retained defendants Howard Emmerman and Rudnick & Wolfe (jointly Rudnick & Wolfe) to represent it in the lease dispute. On July 12, Adler's electricity was cut off. On July 13, some of its office fixtures were removed and its employees were

locked out. That same day, Rudnick & Wolfe obtained a temporary restraining order against the landlord; despite that order, the landlord continued to oust Adler from possession of the leased office space.

On July 14, a rule to show cause was filed against the landlord and the hearing was continued until the following day. Rudnick & Wolfe then discovered that it had previously represented the landlord and filed a motion to withdraw as counsel. Rudnick & Wolfe recommended as substitute counsel defendants Michael Weissman and Weissman & Pond (jointly Weissman). On July 15, Belden and Weissman appeared for the scheduled hearing. However, no hearing occurred; instead, a settlement conference was held.

Belden, accompanied by attorneys from Rudnick & Wolfe, remained in the courtroom while settlement negotiations occurred in the judge's chambers. Belden and Weissman conferred during the negotiations. Following the discussions in chambers, the circuit court vacated the temporary restraining order; ordered Adler to vacate the leased space in five days; ordered the landlord to pay Adler $9,500 as damages, $500 as a partial refund for July's paid rent, and $1,050 as a refund of the security deposit; dismissed Adler's complaint with prejudice; ordered the landlord to return all of Adler's property; and ordered the parties to execute mutual general releases. Belden refused to execute a release and maintains that, despite the advice of Weissman and Rudnick & Wolfe, he did not consent to the settlement agreement.

Plaintiffs contend that on July 21, 1982, Rudnick & Wolfe continued to advise plaintiffs to execute the release, even though the firm had withdrawn from the litigation approximately one week earlier. Belden refused to act upon that advice.

On August 13, 1982, Weissman moved to vacate the July 15, 1982, settlement order and also moved to withdraw as counsel. The circuit court continued the motion to vacate and granted the motion to withdraw. Thereafter, another law firm filed an appearance on Adler's behalf. On September 24, 1982, an amended motion to vacate was filed and was subsequently denied.

Adler appealed from the circuit court's order denying its amended motion to vacate. Adler argued that the negotiations were adversely affected by Rudnick & Wolfe's presence, resulting in a gross disparity in bargaining positions because of its former representation of the landlord and that Weissman was the "alter ego" of Rudnick & Wolfe. (*Adler Center for Behavior Modification, Inc. v. Chicago Title & Trust Co.* (1984), 129 Ill. App. 3d 1024, 1027, 473 N.E.2d 378, 380.) We affirmed on December 18, 1984, and on Jan-

uary 22, 1985, we denied Adler's motion for a rehearing.

On August 7, 1987, plaintiffs' new attorneys filed this action. On May 20, 1988, following an amended pleading, these attorneys withdrew. Thereafter, plaintiffs' present counsel filed a third amended complaint alleging legal malpractice, breach of contract, breach of fiduciary duty, and fraud. Defendants filed motions to dismiss under section 2—619 asserting that plaintiffs' claims were untimely and that they were collaterally estopped from relitigating the validity of the settlement order. On March 31, 1989, the circuit court dismissed the complaint with prejudice based upon the period of limitations bar. This appeal followed.

I

Plaintiffs first maintain that the five-year statute of limitations period (Ill. Rev. Stat. 1983, ch. 110, par. 13—205 (eff. July 1, 1982)) did not commence until January 22, 1985, the day we denied Adler's motion for a rehearing. Plaintiffs argue that the damage element of their legal malpractice claim was not present or known to them prior to that day.

■■ Initially, we note that the elements of a claim of legal malpractice are: (1) the existence of an attorney-client relationship, (2) a breach of a duty arising from that relationship, (3) causation, and (4) damages. (*Jackson Jordan, Inc. v. Leydig, Voit & Mayer* (1990), 199 Ill. App. 3d 728, 732-33, (and cases cited therein); *Coughlin v. SeRine* (1987), 154 Ill. App. 3d 510, 514, 507 N.E.2d 505, 508; *Bartholomew v. Crockett* (1985), 131 Ill. App. 3d 456, 465, 475 N.E.2d 1035, 1041.) The various districts of the appellate court of this State have taken different views in determining when a cause of action for legal malpractice accrues under section 13—205 of the Code of Civil Procedure. Compare *Dolce v. Gamberdino* (1978), 60 Ill. App. 3d 124, 126, 376 N.E.2d 273, 275, with *Tucek v. Grant* (1984), 129 Ill. App. 3d 236, 240, 472 N.E.2d 563, 566.

■ The first district has held that legal malpractice actions ordinarily accrue "when the attorney breaches its duty." (*Jackson Jordan, Inc.*, 199 Ill. App. 3d at 733; *Zupan v. Berman* (1986), 142 Ill. App. 3d 396, 399, 491 N.E.2d 1349, 1351, citing *West American Insurance Co. v. Sal E. Lobianco & Son Co.* (1977), 69 Ill. 2d 126, 132, 370 N.E.2d 804, 807; *Dolce v. Gamberdino*, 60 Ill. App. 3d at 126, 376 N.E.2d at 275.) The second district has taken the position that " 'a cause of action for legal malpractice does not accrue until the client discovers, or should discover, the factors establishing the elements of his cause of action.' " (*Tucek v. Grant* (1984), 129 Ill.

App. 3d 236, 240, 472 N.E.2d 563, 566, quoting *Kohler v. Woollen, Brown & Hawkins* (4th Dist. 1973), 15 Ill. App. 3d 455, 460, 304 N.E.2d 677, 681.) The first district has also recognized the discovery rule in determining when the statute of limitations commences on a legal malpractice claim. (*Jackson Jordan, Inc.*, 199 Ill. App. 3d at 735.) In this district, however, the application of the discovery rule has been limited only to those instances where "the discovery occurs after the statute of limitations has run or when discovery occurs at a time so near the running that the action, for all practical reasons, has been barred before a party has learned of the accrual." (*Dolce v. Gamberdino*, 60 Ill. App. 3d at 128, 376 N.E.2d at 276.) Nevertheless, given the facts in this case, we conclude that the limitations result would be the same under either the *Dolce* or *Tucek* analysis.

Plaintiffs argue that because the circuit court's order could have been reversed on appeal, they did not know whether they had been damaged by the actions of defendants on July 15, 1982. However, given the nature of defendants' alleged activities and plaintiffs' knowledge of them at the time of the alleged breach, we conclude that they had knowledge of damages as of July 15, 1982.

In *Zupan*, the court rejected the same argument under a similar fact pattern. In that case, the plaintiff-client had been a defendant in a dramshop action. The jury returned a verdict for $69,400 against her. On July 22, 1977, the trial court entered an order reducing that amount to $23,600. Plaintiff filed post-trial motions and an appeal. On January 22, 1979, the court affirmed the judgment, modified the award of damages, and remanded. On October 4, 1982, the plaintiff-client filed a malpractice action against her attorney arising out of the dramshop litigation. (*Zupan v. Berman*, 142 Ill. App. 3d at 397, 491 N.E.2d at 1350.) The trial court dismissed the complaint as untimely. On appeal, the plaintiff in that case, just as the plaintiffs in this case, argued:

> "[B]ecause the damages determined by the trial court were subject to possible reversal in whole or in part as a result of either the post-trial motions or the appeal, she could not have known with certainty what damages, if any, she had incurred at the time judgment was entered by the trial court. Thus, plaintiff argues that her cause of action against defendant could not accrue until all avenues of appeal had been exhausted." (*Zupan*, 142 Ill. App. 3d at 398, 491 N.E.2d at 1351.)

The court affirmed the trial court's order dismissing the complaint

and found that the lines of reasoning in *Dolce* and *Tucek* intersected with the facts in that case. (*Zupan,* 142 Ill. App. 3d at 399, 491 N.E.2d at 1352.) The court reasoned that under the *Dolce* rationale, "the adverse result at the time of the end of the trial is the operative factor" in determining when the statute of limitations commenced. (*Zupan,* 142 Ill. App. 3d at 399.) In that case, the operative factor occurred on July 22, 1977. In applying the *Tucek* rationale, the court found that "plaintiff admitted that she was reasonably aware that defendant had wrongfully caused her injury at the time judgment was entered." (*Zupan,* 142 Ill. App. 3d at 399.) The court, therefore, rejected the argument that the element of damages was unknown until either affirmance or reversal.

As applied to the case at bar, plaintiffs' argument that the element of damages was not present until we affirmed the trial court's order is unpersuasive. Following the rationale in *Zupan,* the alleged breach of duty was actionable on July 15, 1982, and the element of damage was known or should have been known to plaintiffs on that day. Given the fact that defendants had allegedly entered into a settlement agreement over Belden's objection, plaintiffs' knowledge of the elements of this cause of action was established as a matter of law. See *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874.

Plaintiffs allege that due to their attorneys' conduct, they had to abandon the leased space and were forced out of business. We believe that plaintiffs should have realized that even if the circuit court's orders were reversed and the settlement were set aside, damages would still be present. A reversal of the settlement order between Adler and the landlord would not have alleviated the additional damages occasioned by the loss of the business or the additional expenses caused by defendants' alleged malpractice. In short, the only difference between affirmance and reversal is the amount of damage sustained. The discovery rule may be employed where "uncertainty exists as to the fact of damage" but not where uncertainty exists only as to the amount of damage. (*Jackson Jordan, Inc. v. Leydig, Voit & Mayer* (1990), 199 Ill. App. 3d 728, 734.) Moreover, plaintiffs waited over 2½ years after our affirmance to file this action. Plaintiffs had ample time to bring this action within the period prescribed by law.

Accordingly we hold that the limitations period commenced on July 15, 1982, and lapsed five years later. The circuit court, therefore, properly held that plaintiffs' complaint, filed on August 7, 1987, was untimely.

## II

Plaintiffs next argue that the element of damages in the breach of contract, breach of fiduciary duty, and fraud claims was unknown prior to January 22, 1985. However, because we have rejected this argument above, we need not discuss it again here.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.