254 N.J. Super. 530 (1992)
604 A.2d 126
ABRAHAM GRUNWALD, PLAINTIFF-APPELLANT,
v.
NOAH BRONKESH, ESQ., INDIVIDUALLY AND SILLS BECK CUMMIS ZUCKERMAN RADIN & TISCHMAN, T/A SILLS BECK CUMMIS ZUCKERMAN RADIN TISCHMAN EPSTEIN & GROSS, A PROFESSIONAL CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 1991.
Decided February 27, 1992.
*531 Before Judges MICHELS, O'BRIEN and HAVEY.
Andrew J. Kyreakakis argued the cause for appellant (Ambrosio, Kyreakakis & DiLorenzo, attorneys; Anthony P. Ambrosio, of counsel; Andrew J. Kyreakakis and Ronald S. Bergamini, on the brief).
Philip R. Sellinger argued the cause for respondents (Sills Cummis Zuckerman Radin Tischman Epstein & Gross, attorneys; Philip R. Sellinger, of counsel; Philip R. Sellinger and Karen L. Jordan, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiff Abraham Grunwald appeals from a summary judgment of the Law Division that dismissed his legal malpractice action against defendants Noah Bronkesh, Esq. (Bronkesh) and *532 Messrs. Sills Cummis Zuckerman Radin Tischman Epstein & Gross (improperly referred to as Sills Beck Cummis Zuckerman Radin & Tischman, and hereinafter referred to as Sills-Cummis) on the ground that the action was barred by the six-year statute of limitations. The novel issue raised by this appeal is whether the statute of limitations commences to run on a legal malpractice action from the time the underlying lawsuit giving rise to the claim is decided in the trial court or from the time the appellate process has been exhausted.
Plaintiff was the owner of undeveloped real property in Atlantic City, New Jersey which he desired to sell to Resorts International Hotel & Casino, Inc. (Resorts). In the summer of 1983, plaintiff retained Bronkesh, a member of the Sills-Cummis law firm, to negotiate an option agreement and to prepare the necessary documentation. Bronkesh prepared an Option Agreement and an Agreement to Sell Property. These documents were sent to Resorts for execution. On September 13, 1983, Resorts signed the Option Agreement under which it had the exclusive option to purchase the property and paid plaintiff $362,500 as consideration for the option. Attached to the Option Agreement was the Agreement to Sell Property, which also was executed by Resorts. After Resorts executed both documents and returned them to plaintiff, plaintiff presented them to Bronkesh and solicited Bronkesh's advice with respect to them. According to plaintiff, on September 16, 1983, Bronkesh advised him that Resorts had exercised its option to purchase his property by executing the two documents. Bronkesh allegedly represented to plaintiff that there was a binding and enforceable agreement whereby Resorts would purchase the property for $13,355,727. Plaintiff claims that he proceeded in reliance upon Bronkesh's advice and rejected another deal regarding the property involving a 214 unit housing project.
On February 28, 1984, Resorts wrote to plaintiff informing him that it decided not to exercise its option. On the following day, defendants wrote to Resorts, advising Resorts that it had already exercised the option by executing the Agreement to Sell *533 Property on September 13, 1983. In March of 1984, Resorts wrote to defendants and defendants responded with each setting forth their respective legal opinions as to the legality and effect of the execution of both documents. Resorts claimed that it signed the Agreement to Sell Property by mistake and denied the existence of a binding contract to purchase the property. Bronkesh insisted that Resorts had exercised the option and demanded that Resorts close on the property on April 2, 1984. Resorts refused to close on the property.
Subsequently, Bronkesh recommended that plaintiff retain another law firm to institute an action against Resorts. Plaintiff retained another law firm, and on April 16, 1984, instituted suit in the Chancery Division against Resorts, seeking specific performance or, alternatively, compensatory damages for the allegedly wrongful breach of the Agreement to Sell Property. On July 31, 1984, at the conclusion of the proofs, the Chancery Division judge found that the execution of the Option Agreement and the Agreement to Sell Property were equivocal; that plaintiff could not rely on them without inquiring into Resorts' intent, and that Resorts had no intention of exercising its right to buy the property on September 13, 1983. The Chancery Division judge further found that Resorts intended only to exercise its option to purchase in the future and thereupon entered judgment in favor of Resorts dismissing plaintiff's suit. According to plaintiff, Bronkesh was present when the Chancery Division judge rendered his oral opinion and Bronkesh recommended an appeal. Plaintiff claims that on the advice of Bronkesh he met with another attorney to discuss the appeal and that this attorney told him that the appeal was viable. On October 11, 1984, plaintiff appealed and on November 20, 1985, we affirmed the Chancery Division judgment in an unpublished opinion in Grunwald v. Resorts International Hotel Casino, Inc., A-544-84T3.
On September 28, 1990, plaintiff instituted this action against Bronkesh and Sills-Cummis, alleging that defendants were negligent and guilty of legal malpractice in advising him that *534 the documents executed by Resorts constituted a binding agreement for Resorts to purchase his property for $13,355,727. Plaintiff claimed that he (1) was prevented from completing a 214 unit project on his property, resulting in substantial losses, including the loss of the land itself and other damages; (2) was forced to incur counsel fees and other expenses in litigating the enforceability of the Agreement to Sell Property in the underlying litigation, and (3) was forced to incur counsel fees and other expenses totaling $150,000 in a law suit entitled Donald Segal, et al. v. Abraham Grunwald, et al. which was pending in the Chancery Division. On December 3, 1990, defendants' motion for summary judgment was granted on the ground that the six-year statute of limitations had run against plaintiff's action from July 31, 1984  the date that the underlying lawsuit in the Chancery Division was dismissed. The trial court, in part, reasoned that plaintiff should have known that his damages were attributable to Bronkesh's negligence and legal malpractice at the time the Chancery Division judge dismissed the suit against Resorts. The trial court further reasoned that the possibility that such damages would be mooted if plaintiff had been successful on appeal was of no moment, because plaintiff had knowledge that a wrong had been committed. The trial court disagreed with plaintiff's contention that the statute of limitations was tolled until the Appellate Division proceeding had concluded. This appeal followed.
N.J.S.A. 2A:14-1 provides, in pertinent part, that: "Every action at law ... for any tortious injury to the rights of another ... shall be commenced within 6 years next after the cause of any such action shall have accrued." This six-year limitations period applies to claims for legal malpractice. Carney v. Finn, 145 N.J. Super. 234, 235-36, 367 A.2d 458 (App. Div. 1976); Fuschetti v. Bierman, 128 N.J. Super. 290, 294, 319 A.2d 781 (Law Div. 1974). See also, Mant v. Gillespie, 189 N.J. Super. 368, 372, 460 A.2d 172 (App.Div. 1983); Aykan v. Goldzweig, 238 N.J. Super. 389, 390, 569 A.2d 905 (Law Div. 1989). Statutes of limitations are designed to act as measures *535 of repose, prompting diligent pursuit of claims and preventing assertion of stale claims. Ochs v. Federal Insurance Co., 90 N.J. 108, 112, 447 A.2d 163 (1982); O'Keeffe v. Synder, 83 N.J. 478, 490-91, 416 A.2d 862 (1980); Kaczmarek v. New Jersey Turnpike Authority, 77 N.J. 329, 337, 390 A.2d 597 (1978).
Under New Jersey's traditional rule, a tort cause of action accrues when plaintiff "suffers actual consequential damage or loss from the defendant's negligence." (Emphasis added). Diamond v. New Jersey Bell Telephone Co., 51 N.J. 594, 596, 242 A.2d 622 (1968) (quoting Rosenau v. City of New Brunswick, 51 N.J. 130, 138, 238 A.2d 169 (1968)); P.T. & L. Const. v. Madigan & Hyland, 245 N.J. Super. 201, 207, 584 A.2d 850 (App.Div.), certif. denied, 126 N.J. 330, 598 A.2d 888 (1991); Hermes v. Staiano, 181 N.J. Super. 424, 429, 437 A.2d 925 (Law Div. 1981). In Montag v. Bergen Bluestone Company, 145 N.J. Super. 140, 144, 366 A.2d 1361 (Law Div. 1976), Judge Pressler, then in the Law Division, explained:
It is well settled, as a matter of judicial interpretation, that the date on which a cause of action accrues, and hence the date from which the statute of limitations starts to run, is the date upon which the right to institute and maintain a suit first arises.
An action for legal malpractice derives from the tort of negligence. Gautam v. DeLuca, 215 N.J. Super. 388, 396, 521 A.2d 1343 (App.Div. 1987). A necessary element of this cause of action is that plaintiff's alleged damages were proximately caused by the attorney's breach of a professional duty. Id. at 397, 521 A.2d 1343; Albright v. Burns, 206 N.J. Super. 625, 632, 503 A.2d 386 (App.Div. 1986); Synder v. Baumecker, 708 F. Supp. 1451, 1462 (D.N.J. 1989); see also Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 342, 419 A.2d 417 (1980). It is axiomatic that actual damages are an element of a cause of action grounded in negligence and that the statute of limitations will not run until plaintiff has suffered damages. W. Page Keeton, et al., Prosser & Keeton on the Law of Torts § 30, at 165 (5th ed. 1984).
*536 Here, until plaintiff's appeal had been resolved he did not have a right to institute and maintain a suit for legal malpractice. Although the judgment in the Chancery Division may have placed plaintiff on notice that there were facts indicating that he may have suffered damages recoverable in a legal malpractice action against defendants should the underlying appeal fail, the running of the statute of limitations did not commence because plaintiff had not yet suffered any irremediable damages. Until the appellate process was over, it was uncertain whether there would be damages attributable to Bronkesh's claimed legal malpractice and until such time plaintiff could not properly maintain this legal malpractice action against defendants. Had plaintiff's appeal been successful, his legal malpractice claim against defendants would have been rendered moot because he would not have suffered any damages. Stated somewhat differently, if the appeal were to be resolved in plaintiff's favor, there would be no damages proximately caused by defendant's claimed legal malpractice and indeed no negligence or legal malpractice. As long as the possibility of reversal existed, plaintiff's cause of action against defendant would not accrue.
This is not a case where plaintiff is unsure of the extent of his damages, in which case the cause of action will be deemed to have accrued; rather, this is a case where plaintiff is unsure of whether his damages will even exist. Thus, the situation here (where a legal malpractice plaintiff is appealing the case underlying his claim) must be distinguished from the situation where the statute of limitations begins to run although plaintiff does not realize the full extent of his damages. In Northwestern Nat. Ins. Co. v. Osborne, 573 F. Supp. 1045, 1050 (E.D.Ky. 1983), the Federal District Court explained this rationale:
A legal malpractice action differs from such a case in that a subsequent ruling by a trial or appellate court can retroactively change the consequences of the attorney's negligence, removing any damage after the fact. In a legal malpractice action, until some irremediable damage occurs, the occurrence of any damages remains speculative.
*537 The fact that plaintiff's damages are speculative until the underlying appeal has been decided militates against the accrual of his cause of action for legal malpractice. Unlike the Federal Constitution, the New Jersey Constitution has no explicit provision limiting the judicial power to the resolution of actual cases or controversies. In re Quinlan, 70 N.J. 10, 34, 355 A.2d 647 (1976), cert. denied, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1986); Walker v. Stanhope, 23 N.J. 657, 660, 130 A.2d 372 (1957). Compare N.J. Const. of 1947, art. VI, § 1 with U.S. Const., art. III, § 2. However, the courts of this State have recognized "the wholesome policy considerations which confine courts to actual controversies and dissuade them from rendering abstract or advisory opinions." Grand Union v. Sills, 43 N.J. 390, 410, 204 A.2d 853 (1964) (citing Proprietary Ass'n v. Board of Pharmacy, N.J., 16 N.J. 62, 72, 106 A.2d 272 (1954)). Thus, our courts may not render advisory opinions. In re Quinlan, supra, 70 N.J. at 34, 355 A.2d 647; Grand Union, supra, 43 N.J. at 410, 204 A.2d 853; Walker v. Stanhope, supra, 23 N.J. at 660, 130 A.2d 372; New Jersey Turnpike Authority v. Parsons, 3 N.J. 235, 240, 69 A.2d 875 (1949); Trustees of Rutgers College in N.J. v. Richman, 41 N.J. Super. 259, 284, 125 A.2d 10 (Ch.Div. 1956).
If plaintiff were to file his malpractice action against defendants during the pendency of his appeal of the underlying case, he would be asking a court to render what is tantamount to an advisory opinion. As one court noted, "it is plain that no claim would even have existed if the temporary results of the attorney's conduct had been reversed on appeal...." Diaz v. Piquette, 496 So.2d 239, 240 (Fla.App. 3 Dist. 1986), review denied, 506 So.2d 1042 (Fla. 1987). The possibility of reversal of the case forming the basis of plaintiff's legal malpractice claim, thereby mooting plaintiff's damages, would counsel a court to dismiss the malpractice action in light of its obligation to refrain from issuing advisory decisions. As the Nevada Supreme Court stated in Semenza v. Nevada Medical Liability Ins., 104 Nev. 666, 765 P.2d 184, 186 (1988):

*538 [T]his court will not countenance interlocutory-type actions for legal malpractice brought to trial while an appeal of the underlying case is still pending. If an appeal is taken in the underlying case, it is simply premature to proceed to trial on a legal malpractice claim until the appeal of the original judgment on the underlying cause of action has been finally resolved.
Consequently, plaintiff cannot be deemed able to "institute and maintain" his cause of action against defendants until final disposition of the appeal in the underlying case. Until the appellate process has run its course or the time for appeal expired without an appeal having been taken, the legal malpractice action will not accrue and the statute of limitations will not run. To find otherwise would be to encourage "the undesirable result of forcing plaintiffs to burden the courts with malpractice actions following an adverse lower court decision where a reversal of that lower court decision would establish that no cause of action ever existed. A legal cause of action is not a `now-you-see-it, now-you-don't' proposition." Zimmie v. Calfee, Halter and Griswold, 43 Ohio St.3d. 54, 538 N.E.2d 398, 405 (1989) (Brown, J., dissenting).
Postponing the accrual of a legal malpractice cause of action until appellate disposition of or the expiration of the time to appeal the case underlying the malpractice claim is consistent with decisions in many other jurisdictions. See e.g., Woodruff v. Tomlin, 511 F.2d 1019, 1020 (6th Cir.1975) ("Until the case was finally terminated and a final judgment rendered the plaintiff could not prove damage, because the Court of Appeals might have granted a new trial, and on retrial a different result could possibly have occurred."); Bowman v. Abramson, 545 F. Supp. 227 (E.D.Pa. 1982) (dismissing plaintiff's legal malpractice action on the ground that plaintiff's injuries were speculative and hypothetical due to the pending appeal of the dismissed medical malpractice claims); Amfac Distribution Co. v. Miller, 138 Ariz. 152, 673 P.2d 792, 794 (1983) ("[I]n legal malpractice cases, the injury or damaging effect on the unsuccessful party is not ascertainable until the appellate process is completed or is waived by a failure to appeal."); Haghayegh v. Clark, 520 So.2d 58 (Fla.App. 3 Dist. 1988) (until there was a final determination *539 by the appellate court that appellant's option on land had expired the statute of limitations had not commenced to run); Diaz v. Piquette, supra, 496 So.2d at 240 ("We reverse summary judgment entered below on limitations grounds upon the determination that the period for commencing an action on appellants' claim for alleged legal malpractice resulting in the loss of their case at trial did not begin to run until the adverse judgment was affirmed on appeal."); Richards Enterprises, Inc. v. Swofford, 495 So.2d 1210 (Fla.App. 5 Dist. 1986), cause dismissed by, 515 So.2d 231 (Fla. 1987) (statute of limitations on legal malpractice claim ran from when appeal of underlying action decided, not at time trial court denied judgment of foreclosure.); Neylan v. Moser, 400 N.W.2d 538, 542-43 (Iowa 1987) (legal malpractice counterclaims accrued on date when appeals regarding factual issues behind such claims were decided); Semenza v. Nevada Medical Liability Ins., supra, 104 Nev. 666, 765 P.2d at 186 ("[I]t is only after the underlying case has been affirmed on appeal that it is appropriate to assert injury and maintain a legal malpractice cause of action for damages."); Hughes v. Mahaney & Higgins, 821 S.W.2d 154, 157 (Tex. 1991) ("[W]e hold that when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations is tolled until all appeals on the underlying claim are exhausted."). But cf. Arizona Management Corp. v. Kallof, 142 Ariz. 64, 688 P.2d 710, 714 (Ariz. App. 1984); Laird v. Blacker, 229 Cal. App.3d 159, 279 Cal. Rptr. 700 (Cal. App. 2 Dist. 1991), review granted, 284 Cal. Rptr. 85, 813 P.2d 652 (Cal. 1991); Knight v. Furlow, 553 A.2d 1232 (D.C.App. 1989); Belden v. Emmerman, 203 Ill. App.3d 265, 148 Ill.Dec. 583, 560 N.E.2d 1180 (Ill. App. 1 Dist. 1990), appeal denied, 136 Ill.2d 541, 153 Ill.Dec. 370, 567 N.E.2d 328 (1991); Richardson v. Denend, 59 Wash. App. 92, 795 P.2d 1192 (1990), review denied, 116 Wash.2d 1005, 803 P.2d 1309 (1991).
Finally, it seems anomalous to force a plaintiff to contend in the underlying litigation on appeal that he is entitled to a favorable decision, while in a simultaneous legal malpractice *540 action contending that his attorney's negligence was why he received an unfavorable judgment at the trial level. This view was espoused by the Oregon Supreme Court in United States National Bank of Oregon v. Davies, 274 Or. 663, 548 P.2d 966, 970 (1976):
Plaintiff's decedent could have played it safe by filing an action against defendants immediately upon his being sued, in the event it subsequently appeared defendants' negligent advice was the cause of the action brought against him. However, it does not seem wise to encourage the filing of such provisional actions. More important, it could prove to be disastrous to a plaintiff's defense of the action brought against him and, thus, perhaps disastrous to his former legal advisor as well. In the present case, plaintiff's decedent would have been defending one suit or action, claiming he had acted in conformance with the law, while simultaneously maintaining an action against defendants, claiming that he had not acted in conformance with the law because of faulty advice from defendants. Such an inconsistent position would have given rise to impeachment of decedent in his defense of the action brought against him, which certainly is not desirable from either of the present parties' point of view.
In our view, a plaintiff should not be compelled to file a legal malpractice action where a favorable resolution of a pending appeal would render the action moot or unnecessary. The underlying action should be viewed as open until either the time for taking an appeal has expired without an appeal being filed or there is a final disposition of a filed appeal. We believe that the effective and efficient administration of justice is better served by such a rule. Consequently, we hold that the six-year statute of limitations with respect to plaintiff's legal malpractice action against defendants did not begin to run until the appellate process was complete, and that, therefore, this action is not time-barred.
Accordingly, the judgment under review is reversed and the matter is remanded to the trial court for further proceedings.